**FILED**
**United States Court of Appeals**
**Tenth Circuit**

<u>PUBLISH</u>

### UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

_____

**July 17, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

DORLIA WILSON, as next friend to
minor child, W.B.,

    Plaintiff - Appellee,

v.

CHARLIE STOLTENBERG, in his
individual capacity; PATRICE
PEOPLES, in her individual
capacity; HAROLD WINGERT, in his
individual capacity; CHRIS
CUNNINGHAM, in his individual
capacity; JULIE DANDREO, in her
individual capacity; MALYDIA
PAYNE, in her individual capacity;
GLENDY SPIGLE, in her individual
capacity; SUSAN WARD, in her
individual capacity; RYAN COBBS,
in his individual capacity; APRIL
JARBOE, in her individual capacity,

    Defendants - Appellants,

and

USD 290 OTTAWA,

    Defendant.

No. 25-3139

_____

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 2:24-CV-02375-EFM-RES)**

———————————————————

Alex S. Gilmore (Andrew D. Holder with him on the briefs), of Fisher, Patterson, Sayler & Smith, L.L.P., Overland Park, Kansas, for Defendants-Appellants.

Conner Mitchell of Grissom Miller Law Firm, LLC, Kansas City, Missouri (Barry R. Grissom and Jake Miller of Grissom Miller Law Firm, LLC, Kansas City, Missouri; Theodore J. Lickteig of Lickteig Law Firm, LLC, Lenexa, Kansas, with him on the brief), for Plaintiff-Appellee.

———————————————————

Before **PHILLIPS**, **McHUGH**, and **ROSSMAN**, Circuit Judges.

———————————————————

**ROSSMAN**, Circuit Judge.

———————————————————

From 2018 to 2023, W.B., a black student attending public school in the Ottawa School District in Kansas, experienced ongoing racial harassment by his schoolmates. Beginning in 2020, W.B. and his mother, Plaintiff-Appellee Dorlia Wilson, reported the harassment to school employees. But the bullying persisted. Ms. Wilson then filed a civil rights lawsuit in federal district court on behalf of W.B., alleging claims against Defendants under state and federal law.[1]

---

[1] As we will discuss, Ms. Wilson sued the Ottawa School District and various school district employees in their individual capacities. The school district is not relevant to this appeal. The "Defendants" are the individual employees: Ottawa Middle School Principal Charlie Stoltenberg; District Assistant Principal Patrice Peoples; District School Board Members Harold Wingert, Chris Cunningham, Julie Dandreo, Malydia Payne, Glendy Spigle,

2

Defendants moved to dismiss the Complaint and, as relevant here, asserted a qualified immunity defense to Ms. Wilson's Fourteenth Amendment equal protection claim.[2] The district court denied the motion. Defendants now appeal, advancing two arguments. *First*, they are entitled to qualified immunity because, at the time W.B. was racially harassed by his schoolmates, it was not clearly established that a school official's deliberate indifference to such conduct would violate the Fourteenth Amendment. *Second*, the Complaint does not state particularized allegations against the school board member defendants about their participation in the alleged equal protection violation. We reject these arguments. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

**I**[3]

**A**

W.B. was a student in the Ottawa School District, attending elementary school and then middle school, from at least 2018 to 2023. During that time, W.B.'s classmates "racially targeted" him. R.14. Students

---

and Susan Ward; District Superintendent Ryan Cobbs; and Ottawa Middle School counselor April Jarboe.

[2] Ms. Wilson's amended complaint is the operative complaint (Complaint).

[3] We "recite the facts as alleged in the . . . Complaint[.]" *See Garling* v. *United States Env't Prot. Agency*, 849 F.3d 1289, 1292 (10th Cir. 2017).

3

called him racial slurs like "monkey" and "nigger." R.15. They "encouraged W.B. to end his life, which he later attempted to do by hanging." R.14. The students also threatened W.B. by telling him the bullying "would [get] worse[.]" R.15.

In December 2020, W.B. was on the school bus "when other students pulled his hair and called him a 'nigger.'" R.14. After the school bus incident, Ms. Wilson spoke to an Ottawa Middle School counselor about the racial bullying. In November 2021, Ms. Wilson "made her first complaint" to Ottawa Middle School about "the racial bullying W.B. was facing[.]" R.14.

In March 2022, a "meeting was held . . . to discuss [W.B.'s] academic planning[.]" R.15. At this meeting, Ms. Wilson again discussed "[t]he ongoing racial bullying" of W.B. by his peers. R.15. In April 2022, Ms. Wilson again alerted school officials to the racial bullying. She sent "an email . . . to all members of the Ottawa School District and to Superintendent Dr. Ryan Cobbs." R.14. She also "mailed a form provided by [the] District Finance Director," which acted as "an official complaint against [S]uperintendent Dr. [Ryan] Cobbs." R.15. The form "detailed the bullying W.B. . . . w[as] facing in the [school] district." R.15. Ms. Wilson "received no response." R.15.

In early October 2022, Ms. Wilson attended another meeting to discuss W.B.'s academic planning. At that meeting, Ms. Wilson informed

4

Ottawa Middle School Principal Charlie Stoltenberg about "the racial bullying directed at W.B. from September of 2021 through April of 2022." R.15. In November 2022, Ms. Wilson called Ottawa Middle School's seventh grade counselor to report "a racial bullying incident directed at W.B. during a district basketball game." R.15. A month later, in December 2022, Ms. Wilson made another "complaint of racial bullying to the district." R.16. The racial bullying had grown so severe "W.B. refused to go to school" for several days that month. R.15.

When W.B. returned to school, he brought a pocketknife for "self-defense against the student[s] who racially bullied him[.]" R.15. School employees discovered the pocketknife and suspended W.B. from December 16, 2022 through January 12, 2023. W.B. told an assistant principal and a counselor that he brought the pocketknife because "he feared for his life due to the racial bullying." R.15–16. They responded by telling "W.B. to talk to his English teacher . . . about the bullying." R.16.

After his suspension, W.B. "split[] time" between Ottawa Middle School and the District's alternative school, Engage, which "serve[d] students with special needs and those with disciplinary concerns." R.16. "The plan for sending W.B. to Engage was to remove him from the racial bullying environment[.]" R.16. W.B. experienced no racial bullying at Engage.

W.B. eventually returned to Ottawa Middle School. On February 14, 2023, "the school sent an email announcing policy changes to the school's rules on discrimination and racism." R.16. On May 4, 2023, W.B. called Ms. Wilson from school and left a voicemail telling her that "he did not feel safe at school and wanted to report bullying." R.16. After that, Ms. Wilson pulled W.B. out of the Ottawa schools and "enrolled [him] at a [different] school in Oklahoma to escape the racial bullying." R.16.

**B**

In August 2024, Ms. Wilson sued the Ottawa School District and several employees of Ottawa School District. The Complaint alleged civil rights violations—a Title VI claim under 42 U.S.C. § 2000d against the Ottawa School District; claims under 42 U.S.C. § 1983 for violations of the Fourteenth Amendment against all defendants; and a state law tort claim for negligent supervision of a school environment against all defendants.

As relevant here, Defendants moved to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6).[4] They argued Defendants were

---

[4] Defendants' motion to dismiss is not part of the record on appeal, but we may take judicial notice of the filings in district court. *Shields L. Grp., LLC* v. *Stueve Siegel Hanson LLP*, 95 F.4th 1251, 1259 n.4 (10th Cir. 2024) ("[W]e take judicial notice of documents appearing on the district court's docket[.]" (citing Fed. R. Evid. 201)). Accordingly, we take notice of Defendants' motion to dismiss. *See Wilson ex rel. W.B.* v. *USD 290 Ottawa*, No. 2:24-cv-02375-EFM-RES, Dkt. No. 39 (D. Kan. Jan. 6, 2025).

entitled to qualified immunity and the Complaint failed to state a § 1983 claim.

The district court granted the motion to dismiss in part.[5] But it denied qualified immunity to Defendants. Applying the familiar test, the district court found, *first*, as to the constitutional violation prong, the Complaint "plausibly plead[ed] that the . . . Defendants violated W.B.'s right to equal protection through their deliberate indifference to racial harassment." R.29 (heading format omitted). And *second*, the Complaint "plausibly allege[d] that the constitutional right" to be free from "deliberate indifference to racial harassment" was "clearly established at the time of the alleged unlawful conduct." R.31 (heading format omitted).

This timely appeal followed.

## II

Defendants challenge the district court's denial of qualified immunity.[6] They primarily contend the right to be free from deliberate

---

[5] The district court dismissed Ms. Wilson's § 1983 claims against the District for failure to state a claim under *Monell* v. *Department of Social Services of City of New York*, 436 U.S. 658 (1978), as well as two other claims against Defendants: A substantive due process claim and a second equal protection claim premised on a different theory. Ms. Wilson's Title VI claim and state negligence claim remain pending before the district court. None of this is on appeal, so we do not address it further.

[6] We have appellate jurisdiction to review a district court's order denying qualified immunity on a motion to dismiss because it "is a final

indifference to racial harassment was not clearly established. Separately, Defendants argue the Complaint fails to state a Fourteenth Amendment claim against the school board member defendants because it insufficiently alleges their personal involvement in the alleged equal protection violation.

"We review a district court's dismissal under Federal Rule of Civil Procedure 12(b)(6) *de novo*." *See Khalik* v. *United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (emphasis added). We also "conduct *de novo* review of the denial of a motion to dismiss for qualified immunity." *Stepp* v. *Lockhart*, 168 F.4th 1286, 1300 (10th Cir. 2026) (internal quotation marks omitted). In this Rule 12(b)(6) posture, our review requires "analyz[ing] the defendant's conduct *as alleged in the complaint*." *Truman* v. *Orem City*, 1 F.4th 1227, 1235 (10th Cir. 2021) (internal quotation marks omitted); *see also Peterson* v. *Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004) (recognizing that "[a]sserting a qualified immunity defense via a Rule 12(b)(6) motion . . . subjects the defendant to a more challenging standard of review than would apply on summary judgment"). We "accept[] as true" all "well-pleaded allegations in the complaint" and view them "in the light most favorable to

---

decision under the collateral-order doctrine[.]" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 675 (2009); *see also Stepp* v. *Lockhart*, 168 F.4th 1286, 1299–300 (10th Cir. 2026) (explaining, in motion to dismiss context, our jurisdiction under § 1291 to review the district court's "denials of the individual defendants' claims of qualified immunity" on certain § 1983 claims).

the plaintiff." *Truman*, 1 F.4th at 1235 (internal quotation marks omitted). "The pleaded facts must establish that the claim is plausible." *Id.* Applying these standards, we discern no error and affirm.

## III

We begin with whether the district court mistakenly denied qualified immunity to Defendants on Ms. Wilson's Equal Protection Clause claim. "[Q]ualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix* v. *Luna*, 577 U.S. 7, 11 (2015) (*per curiam*) (internal quotation marks omitted). "A motion to dismiss based on qualified immunity imposes the burden on the plaintiff to show both that [1] a constitutional violation occurred and [2] that the constitutional right was clearly established at the time of the alleged violation." *Doe* v. *Woodard*, 912 F.3d 1278, 1289 (10th Cir. 2019) (internal quotation marks omitted). "If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity." *Stepp*, 168 F.4th at 1301 (quoting *Gross* v. *Pirtle*, 245 F.3d 1151, 1156 (10th Cir. 2001)). We consider each prong of the inquiry in turn.

## A

At issue here is the Equal Protection Clause of the Fourteenth Amendment, which provides "[n]o State shall . . . deny to any person within

9

its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV,
§ 1. In the district court's view, the Complaint plausibly alleged the
discriminatory conduct aimed at W.B. was a "form[] of racial harassment
that violate[s] a plaintiff's equal protection rights." R.30. The Complaint
also alleged "the individual Defendants did nothing in response" to
Ms. Wilson's reports of racial bullying experienced by W.B. at school. R.30–
31. Accordingly, the district court concluded Ms. Wilson had stated an equal
protection claim by plausibly alleging Defendants' "deliberate indifference
to racial harassment."[7] R.29 (heading format omitted).

On appeal, Defendants do not challenge the district court's conclusion
on the first prong—that Ms. Wilson plausibly alleged an equal protection

---

[7] In support, and as we will discuss in connection with the second prong,
the district court relied on Tenth Circuit precedent and out-of-circuit decisions
in understanding the constitutional violation alleged. *See Ryan* v. *City of
Shawnee*, 13 F.3d 345, 346, 349–50 (10th Cir. 1993) (holding racial slurs are a
form of harassment that violate the Fourteenth Amendment and are
actionable under § 1983); *Murrell* v. *Sch. Dist. No. 1, Denver*, 186 F.3d 1238,
1243–44, 1250–51 (10th Cir. 1999) (holding state officials can violate the Equal
Protection Clause through deliberate indifference to peer-on-peer sexual
harassment); *Ricketts* v. *Wake Cnty. Pub. Sch. Sys.*, 125 F.4th 507, 525–26
(4th Cir. 2025) (concluding plaintiff alleged a violation of her Fourteenth
Amendment equal protection rights where school officials were deliberately
indifferent to peer-on-peer racial harassment); *Gant ex rel. Gant* v. *Wallingford
Bd. of Educ.*, 195 F.3d 134, 139–40 (2d Cir. 1999) (concluding plaintiff could
maintain a Fourteenth Amendment equal protection claim against school
officials for "deliberate indifference to racial hostility" by peers).

violation.[8] And for good reason. Reviewing *de novo*, and accepting these well-pleaded allegations as true, the Complaint alleged that, over the course of at least five years, W.B. faced consistent and pervasive "racial bullying" by his peers within the Ottawa School District. *See* R.14–16. Ms. Wilson and W.B. repeatedly brought this conduct to the attention of school officials. R.14–16 ¶¶ 22 (email), 24 (in-person meeting), 26 (official complaint), 27 (meeting and in-person complaint), 28 (phone call), 33 (in-person meeting), 40 (email, in-person meeting, and phone call). Defendants took no action in response. W.B. ultimately left the Ottawa School District and moved to another school to escape the racial harassment.

Under these circumstances, and in the absence of any contrary argument by Defendants, we conclude Ms. Wilson has satisfied her burden of stating an equal protection violation—deliberate indifference to racial harassment—under the first prong of the qualified immunity inquiry.

---

[8] The focus of Defendants' appellate challenge is the clearly established prong. In their opening brief, they raise a single issue: "The Individual Defendants are entitled to qualified immunity on Wilson's equal protection claim because, at the time of the alleged conduct, no precedent clearly established that such actions violated the Constitution." Op. Br. at 2. They make no argument concerning the first prong. Ms. Wilson observes as much in her answer brief, stating "Appellants appear to not dispute the first prong of qualified immunity—that the underlying conduct violated Constitutional law—as their argument on interlocutory appeal rests only on the second prong of whether the law was clearly established." Ans. Br. at 3. Defendants do not argue otherwise in their reply brief.

**B**

We turn next to the heart of this appeal—the second prong. The question now before us is whether, at the time W.B. experienced racial bullying at school, was it clearly established that a school official's deliberate indifference to racial harassment would violate the Equal Protection Clause of the Fourteenth Amendment? We answer *yes*.

**1**

"A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix*, 577 U.S. at 11 (internal quotation marks omitted). "A Supreme Court or Tenth Circuit decision on point or the weight of authority from other courts can clearly establish a right." *Halley* v. *Huckaby*, 902 F.3d 1136, 1144 (10th Cir. 2018). Precedent is considered "on point if it involves materially similar conduct or applies with obvious clarity to the conduct at issue." *Lowe* v. *Raemisch*, 864 F.3d 1205, 1208 (10th Cir. 2017) (emphasis omitted) (internal quotation marks omitted). But a case on point "is not required" where "existing precedent [has] placed the statutory or constitutional question beyond debate[.]" *A.N. ex rel. Ponder* v. *Syling*, 928 F.3d 1191, 1197 (10th Cir. 2019) (first alteration in original) (quoting *White* v. *Pauly*, 580 U.S. 73, 79 (2017) (*per curiam*)). "The dispositive question in all cases is whether 'the violative nature' of the particular

conduct at issue is clearly established." *Id.* (quoting *Mullenix*, 577 U.S. at 12).

In considering the second prong of the qualified immunity inquiry, we abide the Supreme Court's directive "not to define clearly established law at too high a level of generality." *Stepp*, 168 F.4th at 1301 (quoting *City of Tahlequah* v. *Bond*, 595 U.S. 9, 12 (2021) (*per curiam*)); *Ashaheed* v. *Currington*, 7 F.4th 1236, 1247 (10th Cir. 2021) ("The circumstances of each qualified immunity case remain relevant to whether a reasonable officer would be on notice that conduct is unconstitutional."). But even "general statements of the law" can suffice to clearly establish a right if they "giv[e] fair and clear warning" that the particular conduct at issue is unconstitutional. *Hope* v. *Pelzer*, 536 U.S. 730, 741 (2002) (quoting *United States* v. *Lanier*, 520 U.S. 259, 271 (1997)). Fair and clear warning exists when "[a] general rule . . . states the contours of a constitutional transgression in a well-defined or well-marked manner without leaving a vaguely-defined legal border." *Ashaheed*, 7 F.4th at 1246 (brackets and internal quotation marks omitted).

**2**

Applying these principles here, we conclude the constitutional violation alleged by Ms. Wilson was clear beyond debate.

13

**a**

Like the district court, we begin with our precedents: *Ryan* v. *City of Shawnee*, 13 F.3d 345 (10th Cir. 1993) and *Murrell* v. *School District No. 1, Denver*, 186 F.3d 1238 (10th Cir. 1999).

In *Ryan*, the plaintiff, a black firefighter, brought a § 1983 equal protection claim against his employer, the City of Shawnee, alleging racial harassment and discrimination. *See* 13 F.3d at 346, 349–50. The plaintiff alleged his employer directed racial slurs at him, made racially-charged jokes, "disciplined [him] more harshly" than his white coworkers, subjected him to "discriminatory promotion practices," and ultimately fired him "because of his race." *Id.* at 346. The district court granted summary judgment, and plaintiff appealed. *See id.* We reversed, concluding the City's conduct was actionable under § 1983 as a violation of the Fourteenth Amendment right to equal protection. *See id.* at 349–50 (concluding the plaintiff "may recover for racial harassment against the City under section 1983"). In doing so, we relied on *Starrett* v. *Wadley*, 876 F.2d 808 (10th Cir. 1989). *See id.* at 350. In *Starrett*, we held sexual harassment "can violate the Fourteenth Amendment right to equal protection of the laws[,]" and described our decision as "follow[ing] the Supreme Court's intimations on the subject and join[ing] the ranks of other circuits that have addressed the issue." 876 F.2d at 814.

14

In *Murrell*, a plaintiff brought a § 1983 action on behalf of her daughter against a school district and a number of individuals who worked there. 186 F.3d at 1252. She alleged the defendants violated her daughter's Fourteenth Amendment right to equal protection by "know[ing] of and fail[ing] to remedy [the] sustained sexual harassment" of her daughter by a fellow student. *See id.* at 1242. The district court granted the school district's motion to dismiss under Rule 12(b)(6). *Id.* at 1243. Plaintiff urged reversal, explaining she stated an equal protection claim by alleging the individual defendants "knew about" the harassment and "acquiesced in that conduct by refusing to reasonably respond to it." *Id.* at 1250. We agreed the plaintiff had "stated a[n equal protection] claim under section 1983" against the individual defendants "unless their assertion of qualified immunity [wa]s valid." *Id.* at 1251. We then concluded the individual defendants were not entitled to qualified immunity. *See id.* at 1252.

As to the constitutional violation prong, we held "a governmental official or supervisory employee may be held liable under section 1983 upon a showing of deliberate indifference to known sexual harassment." *Id.* at 1250. In so holding, we drew on our precedent recognizing an equal protection claim where "a supervisor or employer participates in or consciously acquiesces in sexual harassment by an outside third party or by co-workers." *Id.* (emphasis omitted) (quoting *Noland* v. *McAdoo*, 39 F.3d

15

269, 271 (10th Cir. 1994)). "[L]iability under § 1983 must be predicated upon a deliberate deprivation of constitutional rights by the defendant and not upon mere negligence[,]" we explained, and the plaintiff satisfied this standard because she "state[d] facts sufficient to allege defendants actually knew of and acquiesced in" the peer-on-peer sexual harassment. *Id.* (brackets and internal quotation marks omitted) (first quoting *Woodward* v. *City of Worland*, 977 F.2d 1392, 1399 (10th Cir. 1992); and then quoting *Jojola* v. *Chavez*, 55 F.3d 488, 490 (10th Cir. 1995), *abrogated on other grounds as recognized in Martinez* v. *City of Aurora*, 174 F.4th 745, 756 (10th Cir. 2026)).

As to the clearly established law prong, we recognized that, in this circuit, "sexual harassment . . . can violate the Fourteenth Amendment right to equal protection of the laws[.]" *Id.* at 1251 (first alteration in original) (quoting *Woodward*, 977 F.2d at 1398). We also observed "it has been clearly established since at least 1992 that a person who exercises the state's supervisory authority may be held liable [under the Equal Protection Clause] for consciously acquiescing in sexually harassing conduct by a non-state actor over whom the state actor has authority." *Id.* (citing *Woodward*, 977 F.2d at 1401). Notably, *Murrell*'s holding was not limited to sexual harassment. Rather, we stated broadly that "supervisory municipal employees may be held liable under the Fourteenth Amendment for

deliberate indifference to the discriminatory conduct of third parties[.]" *Id.* We also recognized, in general terms, the key features of an equal protection claim for "deliberate discriminatory conduct":

> Liability under § 1983 must be predicated upon a deliberate deprivation of constitutional rights by the defendant and not upon mere negligence. In order to state a claim of deliberate discriminatory conduct, Ms. Murrell must state facts sufficient to allege defendants actually knew of and acquiesced in Mr. Doe's behavior.

*Id.* at 1250 (brackets, internal quotation marks, and citation omitted).

We conclude *Ryan* and *Murrell*—taken together—satisfy Ms. Wilson's burden to demonstrate the law is clearly established.

**b**

Our conclusion aligns with the consensus of authority from other circuits to address this issue. As the district court observed, two of our sister circuits have recognized an equal protection claim against school officials in their individual capacity where, as here, the allegation is deliberate indifference to discriminatory student-on-student racial harassment. *See Ricketts* v. *Wake Cnty. Pub. Sch. Sys.*, 125 F.4th 507, 525–26 (4th Cir. 2025);

17

*Gant ex rel. Gant* v. *Wallingford Bd. of Educ.*, 195 F.3d 134, 139–40 (2d Cir. 1999).[9] We briefly discuss these precedents.

In *Ricketts*, the Fourth Circuit considered whether plaintiff plausibly alleged a violation of the Fourteenth Amendment Equal Protection Clause where public school officials were deliberately indifferent to the racial harassment a high schooler faced by her peers. *See* 125 F.4th at 514, 525–26. Drawing on its Title IX precedent and out-of-circuit decisions, the court of appeals concluded the plaintiff's allegations could state an equal protection claim. *Id.* at 525. Plaintiff sufficiently alleged "discriminatory peer harassment," "deliberate indifference" by school officials, and that "such deliberate indifference was motivated by a discriminatory intent." *Id.* at 526.

In *Gant*, the Second Circuit considered whether a plaintiff could maintain a Fourteenth Amendment claim alleging public school officials intentionally discriminated against a student on the basis of race through "deliberate indifference to racial hostility in his [elementary] classes[.]" 195 F.3d at 138, 140. There, the court of appeals recognized school officials can be held liable for race discrimination in violation of the Fourteenth

---

[9] We are aware of no circuit that has *rejected* a claim of deliberate indifference to racial harassment under the Equal Protection Clause. Defendants have not argued otherwise.

Amendment "based on their responses to harassment, in the school environment, of a student by other children[.]" *Id.* at 140. The school officials' responses, the Second Circuit reasoned, must rise to deliberate indifference to "be viewed as discrimination by school officials themselves." *Id.* Notably, *Gant* relied on our decision in *Murrell* to hold, for the first time, school officials can be held liable for race discrimination in violation of the Fourteenth Amendment and § 1983 based on "deliberate indifference on the part of the defendants themselves."[10] *Id.* (explaining *Murrell* held "that schoolteachers, administrators, and school boards violate equal protection principles through deliberate indifference to sexual harassment of a student by another student").

---

[10] The Sixth Circuit, in an unpublished decision, considered whether public school officials were entitled to qualified immunity in a case alleging, among other things, a violation of a student's right to equal protection through deliberate indifference to student-on-student religious- and gender-based bullying. *See Shively* v. *Green Loc. Sch. Dist. Bd. of Educ.*, 579 F. App'x 348, 350–52, 356–58 (6th Cir. 2014) (unpublished). Also citing our decision in *Murrell*, the court of appeals denied qualified immunity, observing that "[t]he equal protection right to be free from student-on-student discrimination is well-established." *Id.* at 358 (citing *Murrell*, 186 F.3d at 1250–52). We recognize unpublished cases do not clearly establish the law, *see Green* v. *Post*, 574 F.3d 1294, 1305 n.10 (10th Cir. 2009) ("In determining whether the law was clearly established, we have held that we may not rely upon unpublished decisions."), but *Shively* is instructive because it offers another useful illustration of how to read *Murrell*. *See United States* v. *Engles*, 779 F.3d 1161, 1162 n.1 (10th Cir. 2015) (citing 10th Cir. R. 32.1) (citing unpublished decisions for their "persuasive value").

19

**3**

Defendants resist our conclusion. They maintain *Ryan* and *Murrell* cannot clearly establish the law, which, they explain, "must be particularized to the facts of the case." Op. Br. at 10–11 (quoting *Flores* v. *Henderson*, 101 F.4th 1185, 1197 (10th Cir. 2024)). They insist no factually similar case exists from the Supreme Court or this circuit "recogniz[ing] a constitutional violation based on deliberate indifference to student-on-student or other third-party racial harassment." Op. Br. at 11, 14–15. According to Defendants, "[t]he mixed and limited authority [available] does not give schools officials fair notice of a constitutional duty to address peer racial harassment through a deliberate indifference framework." Op. Br. at 7. We cannot agree.

To be sure, there are factual distinctions between the case before us and *Ryan* and *Murrell*. But that alone is not dispositive. "[O]ur analysis is not a scavenger hunt for prior cases with precisely the same facts, and a prior case need not be exactly parallel to the conduct here for the officials to have been on notice of clearly established law." *Reavis ex rel. Est. of Coale* v. *Frost*, 967 F.3d 978, 992 (10th Cir. 2020) (internal quotation marks omitted). Rather, a "general constitutional rule" can put officials on notice if it "'appl[ies] with obvious clarity to the specific conduct in question' even

20

if no court has held that conduct unlawful." *Sturdivant* v. *Fine*, 22 F.4th 930, 938 (10th Cir. 2022) (quoting *Hope*, 536 U.S. at 741).

These principles have particular purchase in the Equal Protection context. The Equal Protection Clause "is 'essentially a direction that all persons similarly situated should be treated alike,' and 'keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike[.]'" *Stepp*, 168 F.4th at 1305–06 (citation omitted) (first quoting *City of Cleburne* v. *Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985); and then quoting *Nordlinger* v. *Hahn*, 505 U.S. 1, 10 (1992)); *accord Ashaheed*, 7 F.4th at 1247 (observing the Equal Protection Clause prohibits "intentional, arbitrary[,] and unequal treatment of similarly situated individuals" (internal quotation marks omitted)). As we have explained, "[t]he clearly established standard for determining whether an official has violated a plaintiff's right to equal protection under the law is not extremely abstract or imprecise . . . but rather is relatively straightforward and not difficult to apply."[11] *A.N.*, 928 F.3d at 1199.

---

[11] Defendants' reliance on Fourth Amendment jurisprudence does not meaningfully support their position. Standards in the Fourth Amendment context, unlike under the Equal Protection Clause, are "imprecise" and often turn on a "fact-intensive assessment[.]" *A.N.*, 928 F.3d at 1199 (quoting *District of Columbia* v. *Wesby*, 583 U.S. 48, 64 (2018)); *see Illinois* v. *Gates*, 462 U.S. 213, 232 (1983) (noting how probable cause "turn[s] on the assessment of probabilities in particular factual contexts" and cannot be "reduced to a neat set of legal rules"). As the Supreme Court has

On that front, *A.N.* is instructive. There, we considered whether the defendants were entitled to qualified immunity for allegedly discriminating "between A.N. and other sixteen- and seventeen-year-old juvenile arrestees and younger juvenile arrestees in complying with New Mexico's laws prohibiting the public disclosure of juvenile arrest and delinquency information." *Id.* at 1198. We affirmed the denial of qualified immunity, holding the right was clearly established under the Equal Protection Clause, which prohibits "intentional, arbitrary[,] and unequal treatment of similarly situated individuals under the law," and "applie[d] with obvious clarity to Defendants' alleged actions[.]" *Id.* Even without a case factually on point, we recognized the well-settled law of equal protection was "not too general to define clearly established law because 'the unlawfulness' of Defendants' conduct 'follow[ed] immediately from the conclusion' that this

---

explained, when it comes to discerning whether the law is clearly established, "specificity is especially important in the Fourth Amendment context, where . . . '[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine, [like] excessive force, will apply to the factual situation the officer confronts.'" *Mullenix*, 577 U.S. at 12 (second alteration in original) (quoting *Saucier* v. *Katz*, 533 U.S. 194, 205 (2001)). In those cases, a lack of specificity risks "convert[ing] the rule of qualified immunity into a rule of virtually unqualified liability[.]" *A.N.*, 928 F.3d at 1198–99 (first alteration in original) (quoting *Pauly*, 580 U.S. at 79). These concerns—which legitimately inform our approach to the second prong of the qualified immunity inquiry in the Fourth Amendment context—are less prevalent in the Equal Protection Clause context and, in any event, do not support reversal in this case.

general rule exists and is clearly established." *Id.* (quoting *District of Columbia* v. *Wesby*, 583 U.S. 48, 64 (2018)).

And in the Equal Protection context, we also have turned to precedents about race to discern whether the law is clearly established for conduct involving sex. For example, in *Stepp*, we held it was clearly established that school officials violated a student's equal protection rights by segregating the fifth-grade class based on sex. *See* 168 F.4th at 1305, 1307–09. In so holding, we relied on precedents about both sex discrimination, *see United States* v. *Virginia*, 518 U.S. 515, 534 (1996) (holding Virginia's "exclu[sion of] all women" from the Virginia Military Institute, an all-male state-sponsored military college, violated the Fourteenth Amendment Equal Protection Clause), *and* race discrimination, *see Brown* v. *Bd. of Educ.*, 347 U.S. 483, 493 (1954) (holding the "segregation of children in public schools solely on the basis of race" violates the Fourteenth Amendment's Equal Protection Clause). *See* 168 F.4th at 1307–08. Applying these "landmark [g]eneral statement[s] of the law[,]" we concluded the defendants were "on notice that the sex-segregation policy was unconstitutional." *Id.* at 1308–09 (first alteration in original) (internal quotation marks omitted).

Defendants insist school officials would be on notice of what the Constitution requires when it comes to deliberate indifference to *sexual*

23

harassment but not for deliberate indifference to *racial* harassment.[12] We are not persuaded. The Equal Protection Clause provides discernible standards across factual circumstances. And "we require parties to make reasonable applications of the prevailing law to their own circumstances[.]" *Murrell*, 186 F.3d at 1251. The violative nature of Defendants' conduct was readily apparent.

Accordingly, we affirm the denial of qualified immunity to Defendants on Ms. Wilson's equal protection claim.

**IV**

Defendants briefly advance another argument for reversal, focused just on the equal protection claim against the defendant school board members.[13] Ms. Wilson "lumps all Defendants into collective action

---

[12] At oral argument, Defendants conceded they were on notice of what the law required if they knowingly did not respond to peer-on-peer sexual harassment. On this front, one oral argument colloquy was particularly notable. Judge Phillips asked counsel for Appellants: "If all of this same conduct [directed at W.B.] had been on the bus, at the basketball game, . . . hair pulling, the slurs, but the slurs had been to a little girl instead, and so we're talking gender not race, would you agree that . . . would be covered?" Appellants' counsel replied, "Under *Murrell*, yes I would." Oral Arg. at 23:40–4:00.

[13] Defendants also seem to make a related argument that Ms. Wilson's "allegations against the school board members do not state a plausible constitutional claim." Op. Br. at 20. This point is advanced in a single paragraph without any analysis or authority. We find the argument waived for lack of appellate development. *See United States* v. *Cooper*, 654 F.3d 1104, 1128

throughout her claims[,]" Defendants argue, so the allegations against the school board members are not sufficiently particularized and cannot withstand a motion to dismiss. Defendants made a similar argument in support of dismissal before the district court.[14] Their point is well taken but ultimately unavailing.

A plaintiff need provide "only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'" *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley* v. *Gibson*, 355 U.S. 41, 47 (1957)); *see also* FED. R. CIV. P. 8(a)(2). To satisfy this standard and survive a Rule 12(b)(6) motion, "the complaint must plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Morphew* v. *Chaffee County*, 172 F.4th 802, 813 (10th Cir. 2026) (internal quotation marks omitted). In a § 1983 action against multiple

(10th Cir. 2011) ("It is well-settled that arguments inadequately briefed in the opening brief are waived." (brackets and internal quotation marks omitted)).

[14] The district court did not pass on this argument. But we find it preserved because it was pressed. *See Tesone* v. *Empire Mktg. Strategies*, 942 F.3d 979, 992 (10th Cir. 2019) ("[A]ppellate courts can reach issues that were either pressed by the appellant before, *or* passed upon by, the lower court." (emphasis added) (internal quotation marks omitted)).

individual defendants, "it is particularly important . . . that the complaint make clear exactly *who* is alleged to have done *what to whom*, to provide each individual with fair notice as to the basis of the claims against him or her." *Wilson* v. *Montano*, 715 F.3d 847, 852 (10th Cir. 2013) (alteration in original) (internal quotation marks omitted). A plaintiff must specify how each defendant participated in the alleged constitutional violation because § 1983 liability is "predicated on a violation traceable to a defendant-official's 'own individual actions.'" *Pahls* v. *Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013) (quoting *Ashcroft* v. *Iqbal*, 556 U.S. 662, 676 (2009)). When analyzing plausibility, we read a plaintiff's allegations "in the context of the entire complaint[.]" *Ullery* v. *Bradley*, 949 F.3d 1282, 1288 (10th Cir. 2020).

Applying these standards, and drawing all reasonable inferences in favor of Ms. Wilson, the Complaint adequately stated the participation of the school board members in the alleged equal protection violation.[15]

---

[15] Our precedent sometimes analyzes personal participation as part of the inquiry into prong one of qualified immunity. *See Cuervo* v. *Sorenson*, 112 F.4th 1307, 1311–12 & n.2 (10th Cir. 2024) (considering whether the "Plaintiff failed to meet the pleading requirements for a § 1983 claim because she didn't plead personal participation" separate from whether they plead "personal participation insofar as it relates to prong one of qualified immunity"). We also have considered personal participation as an antecedent question. *See Stepp*, 168 F.4th at 1304, 1306–07, 1310 (analyzing whether the complaint adequately alleged personal participation before considering prongs one and two of qualified immunity). We take the latter approach here. But no matter where the inquiry is situated, the conclusion in this case would be the

Ms. Wilson alleged that, "In April 2022, [she] made another documented complaint in an email sent to all members of the Ottawa School District[.]" R.14, ¶ 22. Read in context, this allegation includes the school board members. *See Ullery*, 949 F.3d at 1288. Elsewhere in the Complaint, Ms. Wilson specified that each school board member is "an employee of Defendant Ottawa School District." R.12–13, ¶¶ 6–11. Viewing these allegations "in tandem" with paragraph 22, we can reasonably infer that "all members of the Ottawa School District" includes the school board members. *See Bledsoe* v. *Carreno*, 53 F.4th 589, 608 (10th Cir. 2022) (viewing "the collective allegations in tandem with [the] factual allegations elsewhere in the complaint" to conclude the plaintiff's use of terms like "Defendants" and "Defendant Officers" referred to the "specific actions taken by each individual Appellant"). Under these circumstances, the Complaint "make[s] clear exactly *who* is alleged to have done *what* to *whom*, . . . as distinguished from collective allegations." *Pahls*, 718 F.3d at 1225 (second alteration in original) (internal quotation marks omitted). The Complaint could have been better developed, but the allegations, properly

---

same—namely, the Complaint sufficiently states the school board members personally participated in the equal protection violation alleged.

understood under the controlling standards, satisfy what is required at this stage.

**V**

We **AFFIRM** the district court's order denying qualified immunity and the motion to dismiss Ms. Wilson's Fourteenth Amendment claim.[16]

---

[16] We deny as moot Ms. Wilson's Motion to Expedite to the extent it asks this court to resolve the appeal on an expedited basis.